No. 24-2182

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

ABBIE PLATT, ANNE MILLER, CARRI MICHON,
JESSICA SMITH, and SUZANNE SATTERFIELD,

*Plaintiffs-Appellants*,

v.

LOUDOUN COUNTY SCHOOL BOARD, and MELINDA MANSFIELD,
individually and in her official capacity as
Chairwoman of the Loudoun County School Board,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Eastern District of Virginia, No. 1:24-cv-1873 (Nachmanoff, J.)

## BRIEF OF APPELLANTS

Andrew Block
Ian Prior
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE, Suite 231
Washington, D.C. 20003
(202) 836-7658
andrew.block@aflegal.org
ian.prior@aflegal.org

Thomas R. McCarthy
Rachael C. T. Wyrick
Cody Ray Milner
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
rachael@consovoymccarthy.com
cody@consovoymccarthy.com

January 15, 2025

*Counsel for Appellants*

No. 24-2182, *Platt, et al. v. Mansfield, et al.*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Per Rule 26.1 and Circuit Rule 26.1, Appellants certify that the following have

an interest in the outcome of this appeal:

1.  American First Legal Foundation, *Counsel for Plaintiffs-Appellants*

2.  Bardot, Heather K., *Counsel for Defendants-Appellees*

3.  Block, Andrew, *Counsel for Plaintiffs-Appellants*

4.  Consovoy McCarthy PLLC, *Counsel for Plaintiffs-Appellants*

5.  Loudoun County School Board, *Defendant-Appellee*

6.  Mansfield, Melinda, *Defendant-Appellee*

7.  McCarthy, Thomas R., *Counsel for Plaintiffs-Appellants*

8.  McGavin, Boyce, Bardot, Thorsen & Katz, P.C., *Counsel for
    Defendants-Appellees*

9.  Michon, Carri, *Plaintiff-Appellant*

10. Miller, Anne*, Plaintiff-Appellant*

11. Milner, Cody Ray, *Counsel for Plaintiffs-Appellants*

12. Nachmanoff, Michael, S., *Trial Judge*

13. Platt, Abbie, *Plaintiff-Appellant*

14. Prior, Ian, *Counsel for Plaintiffs-Appellants*

15. Satterfield, Suzanne, *Plaintiff-Appellant*

16.   Smith, Jessica, *Plaintiff-Appellant*

17.   Wyrick, Rachael C. T., *Counsel for Plaintiffs-Appellants*


Appellants are individuals and have no parent corporation, and no corporation owns 10% or more of any stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Thomas R. McCarthy*
Counsel for Plaintiffs-Appellants
Dated: January 15, 2025

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... v

Jurisdictional Statement .............................................................................. 1

Statement of the Issues ............................................................................... 1

Statement of the Case ................................................................................. 2

   I.   The School Board maintains speech policies to control public comments during School Board meetings. .................................... 4

   II.   The School Board silenced Appellants when they attempted to criticize the School Board's handling of an incident implicating student safety. ...... 5

   III.   The School Board repeatedly switched stories before finally deciding to accuse Appellants of violating Policy 2520(A)(3). ................... 9

   IV.   The record demonstrates that the School Board treats speakers differently and permits other speakers to reference students. .................. 10

   V.   The district court denied Appellants a preliminary injunction. ................ 13

Standard of Review ................................................................................... 15

Summary of the Argument ........................................................................ 16

Argument .................................................................................................. 18

   I.   The School Board engaged in viewpoint discrimination against Appellants. ........................................................................................ 19

      A.   The First Amendment prohibits applying neutral laws unequally to discriminate against disfavored viewpoints. ............................ 20

      B.   The district court ignored evidence that the School Board enforced its policies unequally and engaged in post hoc rationalization of its speech suppression. ............................ 23

   II.   The School Board's speech policies violate the void-for-vagueness doctrine. ........................................................................................... 29

      A.   The Due Process Clause requires invalidating laws that fail to clearly define prohibitions or provide clear enforcement standards. ...................................................................... 30

      B.   The district court erroneously relied on inapposite precedent and Policy 2520 fails to clearly define what it prohibits. ................. 34

   III.   This Court should enter a preliminary injunction. ...................... 42

Conclusion.................................................................................................45

Request for Oral Argument ......................................................................46

Certificate of Compliance ........................................................................47

Certificate of Service...............................................................................48

iv

## TABLE OF AUTHORITIES

<u>Cases</u>

*ACLU v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012)...................................................................44

*ACLU v. Tennyson*,
  815 F.3d 183 (4th Cir. 2016)...................................................................20

*Alpha Delta Chi-Delta Chapter v. Reed*,
  648 F.3d 790 (9th Cir. 2011)...................................................................21

*Am. Freedom Def. Initiative v. WMATA*,
  901 F.3d 356 (D.C. Cir. 2018).........................................................22, 23

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)................................................................................16

*Centro Tepeyac v. Montgomery Cnty.*,
  722 F.3d 184 (4th Cir. 2013).................................................23, 34, 43

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*,
  470 F.3d 1062 (4th Cir. 2006).................................................................20

*Citizens United v. FEC*,
  558 U.S. 310 (2010).........................................................................20, 41

*Connolly v. Gen. Constr. Co.*,
  269 U.S. 385 (1926)................................................................................31

*Cook v. Gwinnett Cnty. Sch. Dist.*,
  414 F.3d 1313 (11th Cir. 2005)...............................................................18

*Cornelius v. NCAAP*,
  473 U.S. 788 (1985)................................................................................21

*Davison v. Rose*,
  19 F.4th 626 (4th Cir. 2021).............................................................34, 35

*Edgar v. Haines*,
  2 F.4th 298 (4th Cir. 2021).....................................................................30

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................................... 43

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ....................................................... 30, 31, 32, 39

*Giovani Carandola, Ltd. v. Bason*,
  303 F.3d 507 (4th Cir. 2002) ............................................................ 43

*Good News Club v. Milford Cent. Sch.*,
  533 U.S. 98 (2001) ............................................................... 19, 20, 21

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................................. 17, 19, 31

*Hardwick ex rel. Hardwick v. Heyward*,
  711 F.3d 426 (4th Cir. 2013) ............................................................ 31

*Hill v. Colorado*,
  530 U.S. 703 (2000) ...................................................................... 31, 32

*Imaginary Images, Inc. v. Evans*,
  612 F.3d 736 (4th Cir. 2010) ........................................... 33, 36, 39, 42

*In re Search Warrant Issued June 13, 2019*,
  942 F.3d 159 (4th Cir. 2019) ............................................................ 26

*Intervarsity Christian Fellowship/USA v. Univ. of Iowa*,
  5 F.4th 855 (8th Cir. 2021) ............................................................... 21

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
  3 F.4th 887 (6th Cir. 2021) ......................................................... 38, 39

*Johnson v. United States*,
  576 U.S. 591 (2015) .......................................................................... 34

*Justice 360 v. Stirling*,
  42 F.4th 450 (4th Cir. 2022) ............................................................. 12

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................................ 34

*Manning v. Caldwell for City of Roanoke*,
   930 F.3d 264 (4th Cir. 2019) (en banc) ................................................33

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   722 F.3d 591 (4th Cir. 2013) ...............................................................15

*Moms for Liberty v. Brevard Public Schs.*,
   118 F.4th 1324 (11th Cir. 2024) ..........................................27, 30, 38

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .............................................................................18

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,
   354 F.3d 249 (4th Cir. 2003) ...............................................................43

*Open Just. Baltimore v. Baltimore City L. Dep't*,
   2023 WL 8004885 (D. Md. Nov. 17, 2023) ..........................................22

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*,
   653 F.3d 290 (3d Cir. 2011) .................................................................23

*Reno v. ACLU*,
   521 U.S. 844 (1997) .............................................................................32

*Ridley v. Mass. Bay Trans. Auth.*,
   390 F.3d 65 (1st Cir. 2004) .......................................21, 22, 23, 26, 27

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) .............................................................................33

*Robertson v. Anderson Mill Elementary Sch.*,
   989 F.3d 282 (4th Cir. 2021) ...............................................................20

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) .......................................................................20, 21

*Rudd v. City of Norton Shores*,
   977 F.3d 503 (6th Cir. 2020) ...............................................................18

*Scott v. Roberts*,
   612 F.3d 1279 (11th Cir. 2010) .....................................................42, 44

*Scull v. Virginia*,
359 U.S. 344 (1959)................................................................32

*Sessions v. Dimaya*,
584 U.S. 148 (2018)................................................................34

*Snyder v. Phelps*,
562 U.S. 443 (2011)................................................................18

*Sons of Confederate Veterans, Inc. v. Va. Dep't of Motor Vehicles*,
288 F.3d 610 (4th Cir. 2002)................................................22

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)................................................................27

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*,
566 F. Supp. 3d 327 (D. Md. 2021)........................................23, 26, 27

*Steakhouse, Inc. v. City of Raleigh*,
166 F.3d 634 (4th Cir. 1999)................................................42

*Steinburg v. Chesterfield Cnty. Planning Comm'n*,
527 F.3d 377 (4th Cir. 2008)................................................35, 36

*Street v. New York*,
394 U.S. 576 (1969)................................................................38

*Texas v. Johnson*,
491 U.S. 397, 411 (1989)........................................................21

*United States v. O'Nan*,
452 F. App'x 280 (4th Cir. 2011)........................................16

*United States v. Salerno*,
481 U.S. 739 (1987)................................................................33

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)................................................................32

*W.V. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*,
553 F.3d 292 (4th Cir. 2009)................................................43

*Wag More Dogs, Ltd. Liab. Corp. v. Cozart*,
   680 F.3d 359 (4th Cir. 2012).........................................................31, 32, 33, 40, 41


Statutes

20 U.S.C. §1232h ...............................................................................7

28 U.S.C. §1292 .................................................................................1

28 U.S.C. §1331 .................................................................................1

28 U.S.C. §1343 .................................................................................1


Regulations

34 C.F.R. §99.3.................................................................................7, 11


Other Authorities

Attack, *New Oxford American Dictionary* (3d ed. 2010).........................................40

Criticize, *New Oxford American Dictionary* (3d ed. 2010)...................................40

Target, *New Oxford American Dictionary* (3d ed. 2010) ........................................40

ix

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because Appellants allege that Appellees (collectively, "the School Board") violated the First and Fourteenth Amendments to the U.S. Constitution. 28 U.S.C. §§1331, 1343. This Court has jurisdiction because Appellants appeal from an order denying injunctive relief. *Id.* §1292(a)(1). The district court entered that order on November 22, 2024, and Appellants filed their notice of appeal on November 25, 2024. *See* JA459.

## STATEMENT OF THE ISSUES

**I.** The School Board maintains ostensibly neutral speech policies to manage the speech at public comment periods, but it applies these policies inconsistently. It silenced Appellants for indirectly referencing an individual student, but permitted all other speakers to reference individual students. Both unequal application of neutral policies and post hoc rationalizations for the enforcement in question prove unconstitutional viewpoint discrimination. Was the district court correct that there was "really no evidence" of unequal enforcement? And does Appellants' evidence demonstrate a likelihood of proving as-applied viewpoint discrimination?

**II.** The School Board speech policy prohibits comments that "target, criticize, or attack" individual students. The School Board, however, applies an expansive interpretation and claims that the phrase "target, criticize, and attack" prohibits many types of speech not contemplated by the text of the rule, including merely

1

referencing a student or commenting on a scenario involving a student. Was the district court correct that it could not enjoin the policy as unconstitutionally vague because it was "bound by" precedent, even though citing only precedent that did not consider a vagueness claim? And does the School Board's policy fail to inform ordinary people exercising ordinary common sense what types of speech are prohibited?

**III.**  Appellate courts can order the entry of a preliminary injunction when a remand would be unnecessary or harmful. Here, the irreparable injury and equitable factors are easy, and the district court already explained that these three factors favor a preliminary injunction if likelihood of success is established. Should this Court enter a preliminary injunction now?

## STATEMENT OF THE CASE

On October 8, 2024, Abbie Platt, Anne Miller, Carri Michon, Jessica Smith, and Suzanne Satterfield (collectively, the "Appellants") attended a public meeting of the Loudoun County School Board to criticize the School Board for its decision to allow the return to school of a student who had been arrested for making death threats. But the School Board interrupted, admonished, and ultimately silenced Appellants, in violation of their First Amendment rights to speak freely and petition the government. Tellingly, while the School Board does maintain speech policies to regulate the exercise of speech at public meetings, the School Board could not decide

which provision Appellants violated. In the weeks following October 8, the School Board flip-flopped between five different explanations for why Appellants were silenced before finally settling on a new, sixth rationale—that by referencing, or making "comments specific to" a particular student, Appellants had "targeted" or "attacked" that student in violation of the School Board's Policy 2520(A)(3).

Yet the public record shows that before October 8, the School Board regularly permitted speakers to reference individual students without interruption. Together, this evidence of unequal application and the School Board's shifting post hoc rationalizations for why Appellants were silenced prove that the School Board engaged in as-applied viewpoint discrimination, in violation of the First Amendment. And Policy 2520(A)(3) itself is unconstitutionally vague, in violation of the Fourteenth Amendment, since it neither gives speakers clear guidance on what is prohibited nor provides guardrails to protect against arbitrary enforcement.

Appellants sought a preliminary injunction against the School Board's unconstitutional and unconstitutionally applied policies. The district court denied the preliminary injunction, holding that there was "no evidence" that the School Board treated Appellants differently or permitted other speakers to "refer" to specific students. JA416-417. It also ruled that it was "bound" by precedent to reject the vagueness argument. JA417-418. Each of those rulings is reversible error. Appellants have presented a record that demonstrates unequal application of the

speech policies by the School Board, the district court simply ignored this unrebutted evidence. And neither of the two cases the district court claimed "bound" it on vagueness discuss or apply the vagueness doctrine. This Court should reverse and enter a preliminary injunction in favor of Appellants.

## I. The School Board maintains speech policies to control public comments during School Board meetings.

Loudoun County's public school district is administered by an elected School Board. This School Board meets regularly every second and fourth Tuesday of the month during the school year. In each meeting, the School Board holds a public comment period for parents and community members to express concerns directly to the School Board. The official policy of the School Board encourages active community participation: "Community members are invited and encouraged to attend Loudoun County School Board meetings," and "[t]he School Board welcomes comments from the public and believes strong community engagement is important to a successful school system." JA49. Parents and community members must register to speak and can do so either electronically or in person. When registering, they may, but need not, list a topic for their remarks. At the general bi-monthly meetings, commentators can speak or petition the School Board about any issue concerning the LCPS system.

Policy 2520 also contains a variety of supposedly neutral procedures that apply to the public comment period of any School Board meeting, including:

- "Speakers shall maintain the civility, decorum and respect for the functioning and dignity of the School Board at all times." JA49.

- "Speakers should be respectful and observe proper decorum in their statements and shall refrain from vulgarity, obscenities, profanity or other like breaches of respect." JA49.

- "Speaker comments that target, criticize, or attack individual students are not permitted during public meetings." JA49.

But the School Board does not enforce these policies consistently or uniformly. The School Board has used the leeway provided by these vague terms to weaponize Policy 2520 against Appellants in a way that discriminates on the basis of viewpoint and silences speakers who seek to criticize how the School Board handled a school safety issue.

## II.    The School Board silenced Appellants when they attempted to criticize the School Board's handling of an incident implicating student safety.

On October 8, 2024, Appellants Platt, Miller, Michon, Satterfield, and Smith, along with several other parents and concerned community members, attended the School Board meeting with plans to speak to the School Board about their concerns for safety in school and how the School Board was handling past, ongoing, and future safety concerns. In previous weeks, multiple news sources reported on an unidentified LCPS student with ties to the transnational gang MS-13, who had previously been arrested for threatening the life of a fellow student and charged with possession of a stolen firearm. *See* JA53-54, JA58. These news stories reported that the School Board had permitted this unidentified student to return to school within

the LCPS system. *See* JA53-54, JA58. Appellants attended the School Board's public meeting to criticize the School Board for permitting a potentially dangerous individual to return to school without regard for the safety of other students. *See* JA19.[1]

During the public comment period, Appellants Miller, Michon, and Platt all attempted to speak, but were interrupted, admonished, and forced to self-censor by Chairwoman Mansfield. Although the School Board *now* claims that it silenced Appellants because they "targeted and attacked" a specific student in violation of Policy 2520(A)(3), *see* JA186, on October 8 itself, the record demonstrates that Appellants never did so. Moreover, the School Board never said that Appellants were improperly targeting or attacking a student. In fact, on October 8, the School Board invoked a panoply of other reasons.

The first Appellant to speak was Miller. She criticized the School Board for "betray[ing] the trust of students and parents" and attempted to talk about "[how] the School Board continues to play Russian roulette daily with our children … like the reassignment of yet another student who poses a significant threat to the safety of students, a student with violent gang affiliation who was arrested—" *See* Oct. 8,

---

[1] Appellants' concern and criticism was heightened due to their knowledge that this was not an isolated incident. In 2021, a previous Loudoun County School Board had permitted another dangerous student to return to school after assaulting a classmate. *See* JA19, JA85.

2024, Meeting, at 2:28:42.[2] Mansfield then interrupted Miller and paused her time to speak. Mansfield did *not* say that Miller was violating the "target, criticize, or attack" provision of Policy 2520. Instead, Mansfield stated that Miller was: (1) violating "civility and decorum," (2) "*comment[ing]* on an individual student," and (3) disclosing "personally identifiable information." *See id.* at 2:29:11 (emphasis added).[3]

Next, Appellant Michon spoke, criticizing the School Board for caring less about security within school than outside school: "All of your show perimeter security means nothing if within the walls the children aren't safe. Knowing that recently a student was carrying a concealed weapon walking to school—" *See id.* at 2:37:23. Mansfield then interrupted, again saying nothing about Michon "targeting"

---

[2] All parties agree that the recordings of the School Board's public comments period constitute the public record and comprise the relevant evidence in this case. *See* JA191. Recordings of all school board meetings are available at https://go.boarddocs.com/vsba/loudoun/Board.nsf/Public#, or https://perma.cc/-26DW-9KYL, and specific meetings can be located by navigating to the video under the "Meetings" tab that corresponds to the specific date referenced.

[3] Appellants never disclosed "personally identifiable information" under any applicable standard. Loudoun County School Board Policy 8640 incorporates the definition of "personally identifiable information" from federal law and regulations. *See* Policy 8640(A)(2), https://perma.cc/9STVZVTB; *see also* 20 U.S.C. §1232h(c)(6)(E); 34 C.F.R. §99.3. None of Appellants' comments include the types of speech listed there—particularly since none of Appellants' comments reveal the identity of the still-anonymous referenced student or even include enough details to "allow a reasonable person in the school community, who *does not have personal knowledge* of the relevant circumstances, to identify the student with reasonable certainty." Policy 8640(A)(2)(f) (emphasis added).

or "attacking" a student. Mansfield instead warned that Michon was violating the School Board's policies by (1) "disclosing personal identifiable information about a student" and (2) "*discuss[ing]* a particular student's circumstances." *See id.* at 2:37:44 (emphasis added).

Last, Platt spoke. Her comments criticized the School Board, using broad and generalized language, for its handling of safety concerns: "Where's the protection and the safety for our children who are in school with other children who have known threats, who have been arrested, and who are back in the school." *See id.* at 2:40:16. She then linked the general criticism to a specific context, providing weight to the criticism: "And my daughter is terrified to go to school with him—" *See id.* at 2:40:16. Mansfield then interrupted Platt. Once again, Mansfield said nothing about "targeting" or "attacking" a specific student. Instead, Mansfield said only that Platt was disclosing "personally identifiable information" about a student. *See id.* at 2:40:44.

The practical effect of these interruptions is that Appellants Miller, Michon, and Platt were unable to fully express their beliefs that the School Board was not providing a safe environment for students. After a fourth speaker attempted to criticize the School Board on the same issue, the School Board shut down the public comment period. Appellants Smith and Satterfield were denied the opportunity to speak at all.

8

### III.   The School Board repeatedly switched stories before finally deciding to accuse Appellants of violating Policy 2520(A)(3).

Not only did the School Board not invoke Policy 2520(A)(3)'s prohibition on comments that "target, criticize, or attack" on October 8, but in the following days it flipped flopped among various other explanations for its speech crackdown. On October 9, LCPS Superintendent Aaron Spence and Mansfield issued a joint statement on behalf of LCPS and the School Board. *See* JA63. Yet again, the School Board said nothing about the "target, criticize, or attack" provision of Policy 2520. It instead offered a hodgepodge of different justifications for the suppression: (1) that Appellants were "discuss[ing] a specific student," (2) that the School Board had a "responsibility to call out misinformation" and prevent "unverified information to spread in a public forum," and (3) that Appellants "advance[d] what appears to be a political agenda." JA63. Nowhere in this statement did the School Board quote or allude to Policy 2520(A)(3). Nor did it claim that Appellants violated the "target, criticize, or attack" provision.

It was not until October 22, 2024—two weeks and five abandoned justifications later—that the School Board first implied that Appellants had "criticize[d], target[ed], or attack[ed]" an individual student.[4] *See* October 22, 2024,

---

[4] To recap, the School Board accused Appellants of (1) violating decorum, (2) discussing a specific student, (3) disclosing personally identifiable information, (4) spreading misinformation, and (5) sharing a political agenda, before it *finally* decided to invoke Policy 2520(A)(3)'s language about "target, criticize, or attack."

Meeting, at 2:21:38. And it was not until the School Board filed its first responsive brief on November 11, 2024, that the School Board first clearly invoked Policy 2520(A)(3) or directly accused Appellants of violating that provision. *See* JA186.

Even then, the School Board couldn't keep its reasoning straight. It first claimed that it silenced Appellants because they "each *targeted and attacked* an individual student, in violation of Policy 2520(A)(3)." JA200. Then the School Board claimed it silenced Appellants because they "violated section (A)(3)(A) of Policy 2520 … [when] what they were saying disclosed personally identifiable information of a particular student." JA208. And finally, the School Board fell back to claiming that Appellants were silenced after they "made comments specific to an individual student," which "is clearly prohibited by Policy 2520." JA213.

## IV. The record demonstrates that the School Board treats speakers differently and permits other speakers to reference students.

Even though the School Board claims that making "comments specific to an individual student" "is clearly prohibited by Policy 2520," *see* JA213, the public record reveals that before October 8, the School Board did not silence speakers who referenced or spoke specifically about individual students. The School Board has thus engaged in unequal enforcement of its policies, permitting other speakers to reference individual students, but silencing Appellants for mentioning an individual student while criticizing the School Board's handling of school safety. A few of the more poignant examples of this disparity—taken from the public record and

10

discussed in Appellants' complaint, preliminary injunction briefing, and at the hearing before the district court—are detailed here:

At the January 30, 2024, School Board meeting, one commentor spoke about mental health and addressed the mental health difficulties experienced by her son. During this speech, the commentor spoke about "one of [her son's] seventh-grade peers [who] tragically took his own life." *See* January 30, 2024, Meeting, at 2:51:00 *see also* JA29, JA399, JA440. This comment directly referenced and discussed an individual student in the LCPS school system. And this comment referenced a specific incident and specific details that other people who knew of this child could no doubt use to identify which student the speaker was referring to.[5] The School Board said nothing and did not interrupt, chide, or silence the speaker.

At the same meeting, another commentor spoke about the medical emergencies in school cafeterias. During this speech, this speaker said: "[W]e've had at least one [student] this year that required [emergency medical services] in our cafeteria." *See* January 30, 2024, Meeting, at 3:07:05; *see also* JA29, JA399-400,

---

[5] To be clear, Appellants' position is that this comment does *not* disclose personally identifiable information under any applicable legal definition—primarily because even with the specific details included, someone who does not *already* know about the incident would not be able to identify the student. *See* 34 C.F.R. §99.3. But to the extent that the School Board claims that "target" includes disclosing "personally identifiable information," this demonstrates that the School Board has not consistently applied that principle either.

JA441. This comment specifically discussed an individual student, shared details about an incident involving a specific student, and even disclosed an event that happened to a specific student while on school property. But again, the School Board did not interrupt the speaker or ask her to refrain from such comments.

And at the June 25, 2024, School Board meeting, one commentor chose to speak about students who were "wearing stoles bearing the Palestinian flag" at "the Stonebridge High School graduation." *See* June 25, 2024, Meeting, at 2:49:50; *see also* JA29, JA400, JA441. Again, these comments discussed and referenced specific students, included information relating to the circumstances of these individuals, and addressed a specific incident that occurred at a *named* school—something no Appellant did at the October 8 meeting. Yet the School Board did not interrupt, silence, or admonish this speaker.[6]

---

[6] Further examples of unequal enforcement are found in the public records of subsequent School Board meetings. For example, at the November 12, 2024, School Board meeting, one commentor spoke about a "young lady who had a knee injury" while playing at a recent LCPS soccer game. *See* Nov. 12, 2024, Meeting, at 2:40:23. Despite this reference to a specific student, the School Board did not interrupt or silence this speaker. Another commentor criticized "a student" who "recently published" a "[s]landerous, hateful article" in the school newspaper. *See id.* at 3:03:31. Despite this reference of and direct criticism of a student, the School Board did not interrupt or silence this speaker.

While the district court cannot be faulted for failure to consider these subsequent events, this Court still "may properly take judicial notice of matters of public record," including "ancillary events" that occurred after the order on appeal but are "related to this case." *Justice 360 v. Stirling*, 42 F.4th 450, 455 (4th Cir. 2022) (cleaned up).

**V.     The district court denied Appellants a preliminary injunction.**

On October 25, 2024, Appellants sued the School Board and Chairwoman Mansfield, alleging that the School Board violated the First Amendment by applying its speech policies in a viewpoint-discriminatory manner and by maintaining unconstitutionally vague policies. *See* JA10. Three days later—on October 28— Appellants moved for a preliminary injunction to enjoin the School Board from enforcing its unconstitutional policies against them at future public comment periods. *See* JA43. The district court originally scheduled the hearing on the preliminary injunction for November 8, *see* JA5, but at the School Board's request, continued that hearing until November 22, *see* JA6. Since this continuation meant that additional public comment periods would pass by before the district court considered the requested preliminary injunction, Appellants moved for a temporary restraining order to guarantee their right to speak freely at the intervening public comment periods until the district court considered the requested preliminary injunction. *See* JA115.

In response to Appellants' motion for a temporary restraining order, the School Board abandoned any argument that it had silenced Appellants under Policy 2520(A)(1) or (A)(2), invoking only provision (A)(3) to justify its actions. *See* Resp., JA185-186. The Board also conceded that Appellants satisfied the second, third, and fourth prongs for preliminary relief. *See* JA197-198. The School Board then argued

13

that Appellants were unlikely to succeed on the merits—asserting that its silencing of Appellants was a reasonable application of a viewpoint-neutral policy, *see* JA198-209, and that this Court's precedent foreclosed any vagueness challenge to provision (A)(3), *see* JA209-213.

On November 12, the district court held a hearing for the requested temporary restraining order. *See* JA379. The district court denied the requested temporary restraining order in a ruling from the bench. *See* JA415-418. The district court determined that it "need focus only on the first prong" of the preliminary relief standard, since if Appellants demonstrated "likelihood of success" for the "purported First Amendment violation," "the remaining three factors are also satisfied." JA415. The district court then ruled against Appellants' viewpoint discrimination arguments, concluding that Appellants had "ma[de] reference to a specific student" and "refer[red] to the particular student by reference to the newspaper article or to the criminal case," but also concluding that "really no evidence of prior student-specific public comments that were allowed and not interrupted by the board, which undermines the claim that [Appellants] were treated differently based on viewpoint discrimination." JA416-417. The district court also rejected Appellants' vagueness challenge by citing two opinions from this Court and concluding it was "of course, bound by" that precedent. JA417-418.

At the conclusion of the hearing, the district court and the parties discussed whether a separate preliminary injunction hearing would still be necessary, since the legal standards were the same and the district court had already made its ruling. *See* JA418-421. The district court later committed its decision to writing, *see* JA426-427, and the parties completed briefing on the original preliminary injunction request, *see* JA422-424, JA429-452. The parties then jointly moved to cancel the scheduled preliminary injunction hearing and convert the order denying the temporary restraining order into an order. *See* JA454. Appellants reiterated and maintained their objection to the district court's ruling. *Id.*

On November 22, 2024, the district court converted the order denying the temporary restraining order into an order denying Appellants' requested preliminary injunction. *See* Order, JA458. Appellants filed their notice of appeal on November 25, 2024. *See* Notice, JA459.

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for abuse of discretion. *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013). But because legal errors are abuses of discretion, this Court reviews the district court's legal conclusions de novo. *Id.* And while appellate courts ordinarily review factual findings for clear error, "an appellate court has the obligation to 'make an independent examination of the whole record'" in "cases

raising First Amendment issues." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984); *see also United States v. O'Nan*, 452 F. App'x 280, 282 (4th Cir. 2011) (citing *Bose Corp.*, 466 U.S. at 485).

## SUMMARY OF THE ARGUMENT

The district court should have preliminarily enjoined the School Board's speech restrictions as applied to Appellants and should have preliminary enjoined the School Board's speech restrictions insofar as they are unconstitutionally vague.

*First*, the School Board likely engaged in viewpoint discrimination by silencing Appellants' criticism of how the School Board handled a particular safety situation. The district court ruled that Appellants had not been treated differently because "there's really no evidence of prior student-specific public comments that were allowed and not interrupted by the board." JA416. But in so ruling, the district court ignored the evidence presented by Appellants showing that other speakers were permitted to make detailed comments about individual students without interruption or admonishment. And the district court refused to address Appellants' evidence that the School Board's invocation of Policy 2520(A)(3)—two weeks after the incident—was merely post hoc rationalization for the silencing.

*Second*, Policy 2520(A)(1), (A)(2), and (A)(3) are likely unconstitutionally vague. When ruling against Appellants' vagueness argument, the district court made an obvious error—claiming its vagueness determination was "bound" by two cases

that do not apply or even discuss the void-for-vagueness doctrine. JA417-418. Furthermore, Policy 2520(A)(1), (A)(2), and (A)(3) are unconstitutionally vague because they neither give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," nor "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The prohibitions on what breaks "decorum" in 2520(A)(1) and (A)(2) are inherently standardless and inconsistently enforced at the whims of the presiding officer. And the prohibition on comments that "target, criticize, or attack individual students" in 2520(A)(3) is also vague, as shown by the School Board's continued insistence that this provision bans *also* speech that references or comments on an individual student in any way.

Although this Court could simply correct these errors and remand, it should go further and issue a preliminary injunction enjoining the School Board's speech policies. First Amendment violations cause per se irreparable injury, and neither the School Board nor the public has any interest in allowing unconstitutional regulations to remain in force. The district court already indicated how it would weigh the remaining preliminary injunction factors if Appellants were likely to succeed on the merits, so there is no reason to require it to reiterate that analysis a second time. In

short, both the law and the principle of judicial economy warrant this Court directing the district court to issue a preliminary injunction.

## ARGUMENT

"The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). When parents speak in a public forum to express concerns about their children's safety at a public school, full First Amendment protections attach to that speech. *See Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) ("[I]t is clear that speech relating to the safety of the public involves a matter of public concern," so "speech relating to physical safety and well-being of school children [is] a matter of public concern.") Likewise, the First Amendment protects parents' desire to criticize the government without being silenced or facing repercussions. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 514 (6th Cir. 2020) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.")

Appellants' criticism of the School Board for its handling of a safety concern is therefore fully protected speech under the First Amendment. To be sure, the School Board can enact reasonable viewpoint-neutral speech policies to guide the exercise of speech rights within limited forums, such as a school board's public

comment period. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001). But this case is not about the abstract question of whether a school board can impose some reasonable limitations on speech that occurs in a limited public forum. The First and Fourteenth Amendments to the U.S. Constitution require that such policies still be both clear enough to satisfy the minimum standards of due process (i.e., not vague, *see Grayned*, 408 U.S. 108) and applied to all speakers equally and uniformly (i.e., not viewpoint discriminatory, *see Good News Club*, 533 U.S. at 106-07). The School Board failed both standards here.

## I.     The School Board engaged in viewpoint discrimination against Appellants.

Appellants are likely to succeed on the merits of their argument that the School Board engaged in viewpoint discrimination against them. The district court committed a clear legal error when it ignored record evidence that other speakers who "reference" specific students were not interrupted, but Appellants were silenced for "referencing" a specific student. The record also shows that over the course of one month, the School Board flip-flopped between five different explanations for why parents were silenced before finally settling on a sixth rationale and claiming that Appellants violated Policy 2520(A)(3). This unequal enforcement of similarly situated speakers and post hoc rationalization demonstrate that the School Board engaged in viewpoint discrimination against Appellants.

**A.** **The First Amendment prohibits applying neutral laws unequally to discriminate against disfavored viewpoints.**

Among the many guarantees of the First Amendment lies the foundational principle that "government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *see also ACLU v. Tennyson*, 815 F.3d 183, 186 (4th Cir. 2016) (Wynn, J., dissenting) ("Chief amongst the evils the First Amendment prohibits are government 'restrictions distinguishing among different speakers, allowing speech by some but not others.'" (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010)). The First Amendment therefore roundly prohibits "viewpoint-based discrimination," which occurs whenever "a government official 'targets not subject matter, but particular views taken by speakers on a subject.'" *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting *Rosenberger*, 515 U.S. at 829). In other words, whenever a governmental entity is involved in any form of speech restriction, the "government regulation may not favor one speaker over another." *Rosenberger*, 515 U.S. at 828; *see also Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067-68 (4th Cir. 2006).

All parties here agree that the School Board's public comment periods constitute a limited public forum and therefore the School Board may still impose "reasonable" speech restrictions. *Good News Club*, 533 U.S. at 106-07. But even within a limited public forum, any speech "restriction must not discriminate against

speech on the basis of viewpoint." *Id.* The prohibition on viewpoint discrimination is absolute, no matter where the speech occurs. And most importantly for this case, a speech restriction "that is viewpoint neutral on its face may still be unconstitutional *if not applied uniformly*." *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 864 (8th Cir. 2021) (quoting *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 803 (9th Cir. 2011)) (emphasis added); *see also Cornelius v. NCAAP*, 473 U.S. 788, 811 (1985) ("[R]easonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination.").

This unequal application of an otherwise neutral speech restriction—i.e., allowing certain speakers to speak but silencing other similarly situated speakers—constitutes the forbidden "favor[ing] of one speaker over another." *Rosenberger*, 515 U.S. at 828. Courts must be particularly on guard against application-based viewpoint discrimination "when the speech restricted is speech critical of the government," since "there is a strong risk that the government will act to censor ideas that oppose its own." *Ridley v. Mass. Bay Trans. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004); *see also Texas v. Johnson*, 491 U.S. 397, 411 (1989) ("[E]xpression of dissatisfaction with the policies of this county" is "situated at the core of our First Amendment values.").

It is rare that plaintiffs can present direct evidence of government actors silencing speakers due to disfavored viewpoints, since "[i]n practical terms, the government rarely flatly admits it is engaging in viewpoint discrimination." *Ridley*, 390 F.3d at 86. Courts have therefore "recognized that several types of indirect evidence can be probative of [as-applied] viewpoint discrimination." *Open Just. Baltimore v. Baltimore City L. Dep't*, 2023 WL 8004885, at *8 (D. Md. Nov. 17, 2023), *aff'd*, 2024 WL 5182408 (4th Cir. Dec. 20, 2024). All such types of indirect evidence go towards "showing that the government's treatment of the plaintiff[s] was less favorable than its treatment of other, similarly-situated speakers with different viewpoints." *Id.* at *9; *see also Sons of Confederate Veterans, Inc. v. Va. Dep't of Motor Vehicles*, 288 F.3d 610 (4th Cir. 2002) ("[W]here an evaluation of a given restriction and the surrounding circumstances indicates that one or more speakers are favored over others … the restriction violates the First Amendment.").

So when a governmental entity like the School Board "states that it rejects something because of a certain characteristic, but" accepts "other things possessing the same characteristic," that constitutes strong evidence of unconstitutional viewpoint discrimination. *Ridley*, 390 F.3d at 87; *see also Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 366 (D.C. Cir. 2018) ("[M]ost relevant is a lack of evenhandedness in the Government's actions."). This type of "comparator analysis" "amply establishes viewpoint discrimination" when plaintiffs show that

22

the governmental entity "rejected the [plaintiff's speech], which was materially indistinguishable from the [permitted speech]." *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 299 (3d Cir. 2011). This Court itself has affirmed that as-applied viewpoint discrimination can be proven through "disparate treatment towards people or things sharing the characteristic that was the nominal justification for the action" and "departures from normal procedures." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 367 (D. Md. 2021), *aff'd*, 2021 WL 6502219 (4th Cir. Nov. 3, 2021). Viewpoint discrimination can also be shown through "post hoc rationalization" for the speech suppression, *id.*, since changing "statements by government officials on the reasons for an action can indicate an improper motive." *Ridley*, 390 F.3d at 87; *see also Am. Freedom Def. Initiative*, 901 F.3d at 366 ("[I]f the Government proffers one reason when closing the forum but another when it later defends the closing, then that in itself is evidence of pretext.").

### B. The district court ignored evidence that the School Board enforced its policies unequally and engaged in post hoc rationalization of its speech suppression.

When evaluating likelihood of success, a district court that "rest[s] its decision on a clearly erroneous finding of a material fact" has abused its discretion. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (cleaned up).

**1.** Here, the district court ruled that Appellants were unlikely to succeed on their viewpoint discrimination claim after concluding that "there's really no evidence of prior student-specific public comments that were allowed and not interrupted by the board, which undermines the claim that [Appellants] were treated differently based on viewpoint discrimination." JA416. This is a clearly erroneous finding of material fact, because Appellants had presented substantial evidence on both unequal application and post hoc rationalization.

To conduct a comparator analysis, the Court must first determine the correct level of comparison. Here, the correct level of comparison is whether speakers "referenced" or made "specific comments" about individual students.

The School Board insists that Policy 2520(A)(3)'s prohibition on comments that "target, criticize, or attack" individual students also prohibits more mundane things, such "discuss[ing] a specific student," *supra* at 8; JA63, or making "comments specific to an individual student," JA213. In its ruling below, the district court agreed, stating that Appellants were punished for making "student-specific public comments" and "reference[s] to a specific student." JA416-417. So, since the School Board and the district court alike have acknowledged that Appellants were punished for simply referring to an individual student, the correct comparison is whether other speakers also referred to individual students without being interrupted or silenced.

24

The district court clearly erred in its factual finding, because Appellants provided significant evidence of other speakers making "student-specific public comments" without being "interrupted by the board." JA416. As shown in the public record and as Appellants discussed in their complaint, *see* JA29, in their preliminary injunction briefing, *see* JA440-441, and during the hearing when the district court asked for evidence of unequal enforcement, *see* JA399-400, the School Board has engaged in a consistent practice of permitting speakers to directly and indirectly reference specific students in Loudoun County schools and discuss details of known incidents involving those students. Speakers have been permitted to discuss, without interruption or admonishment, how a "seventh-grade [student] tragically took his own life," how there has been "at least one [student] this year that required [emergency medical services] in our cafeteria," and even how certain students wore "stoles bearing the Palestinian flag" at "the Stonebridge High School graduation." *See supra*, at 12. Each of those examples involves a reference to a specific student (or students) and a detailed discussion of the factual scenario surrounding the incident being discussed. And in none of those examples did the School Board interrupt, admonish, or silence the speakers.

This is not a situation where the district court considered and distinguished this evidence en route to making its decision. The district court ruled that there was "*no* evidence of prior student-specific public comments," JA416 (emphasis added),

even though the evidence of this disparate treatment had been placed before the district court four separate times (in the public record, Appellants' complaint, Appellants' preliminary injunction briefing, and during the hearing before the district court). The district court therefore abused its discretion by "ignor[ing] unrebutted, legally significant evidence." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 171 (4th Cir. 2019) (cleaned up). And this error alone warrants reversal of the district court's denial of the requested preliminary injunction.

**2.** Even without the district court's reversible abuse of discretion for ignoring material evidence, Appellants would still be likely to succeed on the merits of their argument that the School Board engaged in as-applied viewpoint discrimination. The record shows both that the School Board engaged in "disparate treatment towards" similarly situated speakers and that it engaged in weeks-long "post hoc rationalization" for the discrimination. *St. Michael's Media*, 566 F. Supp. 3d at 367; *see also Ridley*, 390 F.3d at 86.

*First*, as previously outlined, the record shows that all sorts of other speakers who were not attempting to criticize the School Board for ongoing safety concerns were permitted to directly and indirectly reference specific students without interruption or admonishment. Yet on October 8, Appellants were silenced after saying equally indirect, unidentifiable, and *fact-based* comments. The School Board has not explained how Appellants' fact-based comments "target, criticize, or attack"

individual students but the other fact-based references to specific students do not. Nor can it.[7] Both sets of comments are factual descriptions, providing information about incidents that happened at school or to students, and that include details that vaguely allude to—but do not identify—individual students. The commentators who did not attempt to criticize the School Board about an ongoing safety issue were not silenced. Appellants, who did attempt to criticize the School Board about an ongoing safety issue, were silenced. This disparate treatment of similarly situated speakers provides strong evidence of as-applied viewpoint discrimination. *See St. Michael's Media*, 566 F. Supp. 3d at 367; *see also Ridley*, 390 F.3d at 86.

*Second*, this evidence of disparate treatment and unequal application is reinforced by the fact that the School Board's current sole justification—that Appellants violated Policy 2520(A)(3)'s "target, criticize, or attack" provision—is no more than a post hoc rationalization. A simple review of the timeline shows that multiple weeks elapsed between the day the School Board silenced Appellants and

---

[7] During the hearing before the district court, there was a discussion over whether Appellants' recitation of reported facts could be "targeting" or "attacking" based on subjective ill-intent. But the School Board cannot lawfully distinguish between one speaker's factual statement and another speaker's factual statement based on its own subjective guesses at which one means well and which one does not. "The government is ill-equipped in any event to decide what is or is not offensive…. [e]nduring speech that irritates, frustrates, or even offends is a 'necessary cost of freedom.'" *Moms for Liberty v. Brevard Public Schs.*, 118 F.4th 1324, 1335 (11th Cir. 2024) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 575 (2011)).

the day that the School Board first accused Appellants of violating Policy 2520(A)(3) or targeting, criticizing, or attacking a specific student.

On October 8, 2024, the School Board said only that Appellants were violating "civility and decorum," "comment[ing] on an individual student," and disclosing "personally identifiable information." *See supra*, at 7-8. On the following day, October 9, 2024, the School Board said Appellants were silenced because they were "discuss[ing] a specific student," spreading "misinformation," and engaging in speech that advanced "a political agenda." JA63. It was not until October 22, 2024, that the School Board first implied that Appellants had "criticize[d], target[ed], or attack[ed]" a specific student." *See supra*, at 9. And it was not until November 11, when the School Board filed its first responsive brief at the district court, that the School Board first invoked Policy 2520(A)(3) by name or directly accused Appellants of violating that provision. *See* JA186.

Chairwoman Mansfield later stated in her sworn declaration that Policy 2520(A)(3) "is not complicated." JA377. But if Policy 2520(A)(3) is not complicated, it should not have taken her multiple weeks and six attempts to settle on that provision as the justification for silencing Appellants. In the same declaration, Mansfield also claimed that she "explained Policy 2520, and specifically section (A)(3) … each time I had to interrupt and redirect a speaker." JA377. Yet a review of the public record itself shows that Mansfield never invoked Policy

28

2520(A)(3) or said that Appellants were targeting, criticizing, or attacking a student while she was interrupting and admonishing Appellants. *See supra*, at 7-8.

These shifting justifications and post hoc rationalizations for why the School Board silenced Appellants' criticism of them confirm the evidence of disparate treatment and prove that the School Board engaged in as-applied viewpoint discrimination. If the School Board was not attempting to silence Appellants' criticism of how it handled the ongoing student safety issue, it would have permitted Appellants to make indirect references to factual scenarios, just as it permitted all other speakers to do. And if the School Board thought that Appellants were truly "targeting," "criticizing," or "attacking" a *student*—rather than referencing a specific incident to criticize *the School Board*—it could have stated that immediately, rather than taking several weeks and stumbling through five other justifications before settling upon Policy 2520(A)(3).

Based on this record, Appellants are likely to ultimately prevail on their arguments that the School Board engaged in as-applied viewpoint discrimination against them and Appellants are entitled to a preliminary injunction to protect their First Amendment rights.

## II. The School Board's speech policies violate the void-for-vagueness doctrine.

Appellants are also likely to succeed on the merits of their argument that Policy 2520 violates the void-for-vagueness principle of the Due Process Clause.

29

The district court ruled against Appellants after stating that it was "bound" by two cases from this Court. But that conclusion is incorrect—neither case discussed or applied the void-for-vagueness doctrine, so neither case provides guidance at all (much less binding precedent) on this issue. Even without that reversible mistake, Appellants are likely to succeed on the merits of their vagueness argument because the School Board's policies fail to clearly inform an ordinary person exercising common sense what types of speech are prohibited, and also permit the School Board to enforce the policies arbitrarily and on a subjective basis.[8]

### A.     The Due Process Clause requires invalidating laws that fail to clearly define prohibitions or provide clear enforcement standards.

One "fundamental concept" of the Due Process Clause of the Fourteenth Amendment is that "'laws which regulate persons or entities must give fair notice of conduct that is forbidden.'" *Edgar v. Haines*, 2 F.4th 298, 316 (4th Cir. 2021)

---

[8] Appellants originally challenged both the "target, criticize, or attack" provision of Policy 2520(A)(3) *and* the "decorum" provisions of Policy 2520(A)(1) and (A)(2) as unconstitutionally vague. But the School Board later abandoned its invocation of Policy 2520(A)(1) and (A)(2) while before the district court. *See* JA185-213. Appellants therefore focus the bulk of their vagueness arguments on Policy 2520(A)(3). However, Policy 2520(A)(1) and (A)(2) are still unconstitutionally vague, because the term "decorum" requires the School Board to make subjective judgment calls on what does and does not violate decorum. Such subjective judgment without "any sensible basis for distinguishing what may come in from what must stay out" invites "unpredictable and haphazard enforcement," *Moms for Liberty*, 118 F.4th at 1337 (cleaned up), and violates the principle that laws have "precision and guidance" "so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

(quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). A government prohibition that uses "terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" "violates the first essential of due process of law." *Connolly v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The void-for-vagueness doctrine safeguards two distinct principles of due process. The first principle is that "regulated parties should know what is required of them so they may act accordingly." *Fox Television*, 567 U.S. at 253. The second is that laws require "precision and guidance" so that "those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

So "an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned*, 408 U.S. at 108, or "if it fails to establish standards for the government and public that are sufficient to guard against the arbitrary deprivation of liberty interests," *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013) (cleaned up). The two prongs of the vagueness inquiry operate independently; "[r]egulations can be struck down as impermissibly vague for either" of these "two reasons." *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012). A court must first examine whether the challenged regulation "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Then, the court must also ask whether the regulation "authorizes or

even encourages arbitrary and discriminatory enforcement." *Id.* (quoting *Hill*, 530 U.S. at 732).

More than once, the Supreme Court has reminded that the void-for-vagueness doctrine's requirement of clarity is especially demanding when First Amendment freedoms are at stake. If the challenged prohibition "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). And "[w]hen speech is involved, *rigorous* adherence" to due process principles "is necessary to ensure that ambiguity does not chill protected speech." *Fox Television*, 567 U.S. at 253-54 (emphasis added). The requirement that a government restriction clearly define its prohibitions "is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law." *Scull v. Virginia*, 359 U.S. 344, 353 (1959); *see also Reno v. ACLU*, 521 U.S. 844, 871-72 (1997) ("The vagueness of such a regulation raises special First Amendment concerns because of its obvious chilling effect on free speech.").

Two other points about how courts conduct vagueness inquiries bear mentioning. *First*, how should courts think about the inquiry of determining whether a law is too vague to be constitutional? As this Court has explained, the relevant inquiry is "whether the government's policy is set out in terms that the ordinary

32

person exercising ordinary common sense can sufficiently understand and comply with." *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010) (cleaned up). While "perfect clarity and precise guidance" are not required, *id.* (cleaned up), the School Board must still "articulate its aims with a reasonable degree of clarity," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984). This requires some "specific and objective criteria" to both put the regulated parties on notice and to guard against discriminatory or subjective application of the law. *Id.*; *see also Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 278 (4th Cir. 2019) (en banc) ("Supreme Court precedent requires … objectively discernable standards."). "Dictionary definitions and old-fashioned common sense facilitate" that "inquiry." *Wag More Dogs*, 680 F.3d at 371.

*Second*, a plaintiff bringing a vagueness challenge need not show that there is "no set of circumstances" where the law would be constitutional. Normally, when a plaintiff mounts a facial challenge to a government restriction, the plaintiff bears the burden of providing that "no set of circumstances exists under which" the law "would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). But that requirement does not apply to a *vagueness* challenge. This distinction relates to the difference between a normal facial challenge and a vagueness facial challenge. Whereas a normal facial challenge alleges that a law is unconstitutional in all its applications, a vagueness challenge claims that people of ordinary intelligence

cannot even *understand* all of a law's applications—which, in of itself, creates the constitutional infirmity. And the Supreme Court confirmed that the "no set of circumstances" principle does not apply to vagueness challenges when it rejected the argument that "a statute is void for vagueness only if it is vague in all its applications." *Johnson v. United States*, 576 U.S. 591, 603 (2015). That and other "decisions squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Sessions v. Dimaya*, 584 U.S. 148, 160 n.3 (2018) (cleaned up). So here, Appellants do not bear a burden of showing that "no set of circumstances" exists where Policy 2520 could be valid or that Policy 2520 is "vague in all its applications."

**B.    The district court erroneously relied on inapposite precedent and Policy 2520 fails to clearly define what it prohibits.**

A district court considering a preliminary injunction abuses its discretion by committing legal error whenever it misapprehends or misapplies the applicable law. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 241 (4th Cir. 2014); *Centro Tepeyac*, 722 F.3d at 188.

**1.**  Here, the district court ruled against Appellants' vagueness argument in a single paragraph of analysis. It stated that the vagueness challenge was unlikely to succeed since this Court had "upheld similar policies" that "prohibit[ed] personal attacks" and "focused on maintaining civility and decorum" in *Davison v. Rose*, 19 F.4th 626 (4th Cir. 2021), and *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527

F.3d 377 (4th Cir. 2008). JA417. The district court then concluded that it "is, of course, bound by *Davison* and *Steinburg*." JA417-418.

But the district court legally erred and misapprehended the law when concluding it was "bound by such precedent" to reject the vagueness argument. Neither *Davison* nor *Steinburg* addressed the void-for-vagueness doctrine at all.

In *Davison*, this Court reviewed and upheld a facial challenge to a speech restriction called Policy 2-29, which was the precursor to the Loudoun County policy at issue here. *See* 19 F.4th at 635. But *Davison* did not involve a vagueness challenge. The plaintiff in that case argued that Policy 2-29's prohibition on comments that "are harassing or amount to a personal attack against any identifiable individual" facially discriminated based on viewpoint. *Id.* This Court rejected that argument, finding instead that the policy was "*viewpoint neutral*" and was "reasonable in light of the purpose served by the forum." *Id.* at 635-36 (emphasis added). Because *Davison* only dealt with whether the challenged policy was viewpoint neutral on its face, its holding provides no guidance on Appellants' vagueness arguments.

Likewise, in *Steinburg*, the plaintiff brought a facial challenge to a county planning commission's policy that prohibited "personal attacks." 527 F.3d at 386. Just as in *Davison*, this Court never conducted a vagueness analysis or reached a conclusion on whether the policy was unconstitutionally vague or not. Instead, this Court held that a "policy against personal attacks is not facially unconstitutional"

because it is "*content-neutral*." *Id.* at 387 (emphasis added). Again, such a holding provides no guidance on whether a different policy is too vague to provide clear guidance to speakers or enforcers.

At no point in either *Davison* or *Steinburg* did this Court address whether the regulations at issue there would survive a vagueness challenge under the Fourteenth Amendment. At no point in either case did this Court address whether the terms of the speech restrictions at issue there clearly defined what was prohibited. So neither *Davison* nor *Steinburg* offer any guidance—or precedent—on whether a school board's speech restrictions are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Imaginary Images*, 612 F.3d at 749 (cleaned up). By misapprehending this Court's precedent and relying solely on cases that do not involve vagueness holdings, the district court committed legal error and must be reversed.

**2.** Even without the district court's reversible legal error and reliance on inapposite precedents that do not address vagueness, Appellants are still likely to prevail on the merits of their vagueness challenge. Due to its legal error, the district court did not conduct a full vagueness analysis. But a proper vagueness analysis reveals that Policy 2520(A)(3)—particularly as the School Board insists it must be applied—does not allow ordinary people exercising ordinary common sense to ascertain what kinds of speech are prohibited.

*First*, the core terms of Policy 2520(A)(3)—"target, criticize, or attack"—are themselves borderline vague and lack the specific and objective criteria necessary to guide enforcement. The words "target," "criticize," and "attack" collectively refer to speech that is abusive, antagonistic, or offensive. And while most ordinary people exercising ordinary common sense might be able to agree on extreme cases where speech is clearly abusive or antagonistic, in harder cases what constitutes "criticism" or an "attack" is wholly dependent on the subjective views of the official charged with enforcement.

This constitutionally problematic aspect of "target, criticize, or attack" was illuminated both during the district court's hearing and in the public record of the School Board's meetings. As revealed during an exchange before the district court, *see* JA392-393, a recitation of facts can be viewed either as a simple statement of facts or—if the enforcing official subjectively believes the statement of facts is offensive—as an attack. So here, where Appellants simply recited a factual narrative that had been reported in multiple news sources—"a student was carrying a concealed weapon walking to school," *see supra*, at 7—the School Board subjectively chose to view this statement of facts as an attack.

Such a comment is no different than if a parent went before the School Board and spoke about sports safety, saying: "A student in last night's football game injured another player by committing a late hit after the play ended." Perhaps the parent of

37

the student in question subjectively believes the comment is an "attack," but the subjective interpretation of offense does not change the fact that the comment merely recited facts dealing with a legitimate issue of student safety. And it is well settled that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592 (1969). So here, the provision "target, criticize, or attack" is likely unconstitutionally vague since it grants the School Board unfettered discretion to infuse subjective interpretations of offense into what speech is prohibited.

This principle is confirmed by the other courts of appeals that have struck down similar school board prohibitions on "abusive" or "antagonistic" speech. *See Moms for Liberty v. Brevard Cnty. Schs.*, 118 F.4th 1324 (11th Cir. 2024); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021). In *Moms for Liberty*, the Eleventh Circuit struck down a school board's prohibition against "abusive" or "personally directed" comments "because it enabled [the enforcing official] to shut down speakers whenever she saw their message as offensive," rendering "the ban on 'abusive' speech" "an undercover prohibition on offensive speech." 118 F.4th at 1334-35. Such subjective discretion over enforcement made it "impossible to discern the standard used to assess which speech was permitted at any given meeting," and meant there were "no boundaries beyond the presiding officer's real-time judgment about who to silence." *Id.* at 1335-37. Similarly, in *Ison*,

the Sixth Circuit struck down a school board's prohibition on "abusive" and "antagonistic" comments since these provisions "prohibit speech purely because it disparages or offends" and what counted as offensive was left up to "the Board's interpretation." 3 F.4th at 894.

The same conclusion applies here. Without a limiting construction to cabin the School Board's unfettered discretion, the terms "target, criticize, or attack" lack the "precision and guidance" necessary to prevent the School Board from infusing its own subjective interpretation of when a statement is offensive enough to be an "attack." *Fox Television*, 567 U.S. at 253. Policy 2520(A)(3) is therefore vague on its face, since it lacks objective standards that prevent "those enforcing the law" from acting "in an arbitrary or discriminatory way." *Id.*

*Second*, even if Policy 2520(A)(3) was not already vague on its face, the School Board continues to insist that it can enforce Policy 2520(A)(3) using an expansive interpretation that prohibits many types of speech that are not implicated by the text of Policy 2520(A)(3). This insistence that the text of Policy 2520(A)(3) prohibits multiple categories of speech not mentioned in the text of Policy 2520(A)(3) ensures that the "ordinary person exercising ordinary common sense" cannot simple read Policy 2520(A)(3) and figure out what it prohibits. *Imaginary Images*, 612 F.3d at 749 (cleaned up).

39

Here is where "[d]ictionary definitions and old-fashioned common sense" help illustrate the constitutional infirmity. *Wag More Dogs*, 680 F.3d at 371. The terms "target," "criticize," and "attack" are all common words with generally well-known definitions. "Target" means selecting "a person or thing against whom criticism or abuse is or may be directed." *See* Target, *New Oxford American Dictionary*, at 1776 (3d ed. 2010). "Criticize" means to "indicate the faults of (someone or something) in a disapproving way." *See* Criticize, *New Oxford American Dictionary*, at 410 (3d ed. 2010). And "attack" means "criticize or oppose fiercely and publicly." *See* Attack, *New Oxford American Dictionary*, at 103 (3d ed. 2010). In sum, the words "target," "criticize," and "attack" generally refer to harsh, insulting, abusive, or antagonistic language.

But at every step, the School Board has insisted that it can actively expand the phrase "target, criticize, or attack" to cover many types of speech that are *not* implicated by the normal meaning of these three words. At this point in time, the School Board has also claimed Policy 2520(A)(3) prohibits: "comment[ing] on an individual student," *see supra*, at 7, "discuss[ing] a particular student's circumstances," *see supra*, at 8, "ma[king] comments specific to an individual student," JA213, disclosing "personally identifiable information," *see supra*, at 7-8, spreading "misinformation, JA63, and advancing "a political agenda," JA63. And the district court agreed, concluding that "target, criticize, or attack" also prohibits

"student-specific public comments" and any sort of "reference to a specific student." JA416-417.

But here, as this Court has instructed, "an ounce of common sense is worth more than an 800-page dictionary." *Wag More Dogs*, 680 F.3d at 371 (cleaned up). An ordinary person exercising ordinary common sense who reads the prohibition against comments that "target, criticize, or attack" would think that the provision bans exactly that: comments that "target, criticize, or attack." This ordinary person would never read "target, criticize, or attack" and think that Policy 2520(A)(3) *also* prohibits something as simple as indirectly referencing a specific student or discussing the facts of a particular school-related incident.

After all, if the School Board wanted to ban comments that reference students, it could have written Policy 2520(A)(3) to prohibit "comments that *reference* individual students." Yet it did not. Instead, the School Board adopted a policy that used the explicit terms "target, criticize, or attack," and common sense confirms that those terms do not also mean "reference," "talk about," or "comment on." By insisting that Policy 2520(A)(3) can be stretched to prohibit many types of categories that are not obvious from the face of the provision, the School Board has created a system where "people of common intelligence must necessarily guess at" Policy 2520(A)(3)'s "meaning and differ as to its application." *Citizens United*, 558 U.S. at 324. This means that "the government's policy" is *not* "set out in terms that the

41

ordinary person exercising ordinary common sense" can understand and comply with simply by reading the language of Policy 2520(A)(3). *Imaginary Images*, 612 F.3d at 749 (cleaned up).

In sum, this Court should reverse the denial of the requested preliminary injunction because the district court committed a clear legal error when it claimed it was bound by two cases that do not discuss the void-for-vagueness doctrine. And Appellants are likely to succeed on the merits of their vagueness challenge, both because the terms "target, criticize, or attack" do not contain sufficient restraints to prevent the School Board from enforcing the provision in an arbitrary way and because the School Board's insistence that Policy 2520(A)(3) prohibits many categories of speech that are not discussed in the provision's text ensures that people of ordinary intelligence are unable to determine what exactly the provision bans.

## III.    This Court should enter a preliminary injunction.

As explained above, the district court erred when it held that Appellants were unlikely to succeed. In some cases, that conclusion might lead this Court to simply vacate and remand, letting the district court assess any remaining preliminary-injunction factors. But this Court can also assess those factors. *See Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637-38 (4th Cir. 1999). If those factors are satisfied, this Court can then enter a preliminary injunction itself, *see, e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1298 (11th Cir. 2010), or reverse with instructions to enter a

42

preliminary injunction, *see, e.g.*, *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 252 (4th Cir. 2003). This Court should do more than simply vacate here for two reasons.

*First*, the preliminary-injunction factors can be resolved only one way. This appeal will resolve Appellants' likelihood of success on the merits, and because the School Board's speech policies likely violate the First Amendment, the remaining preliminary-injunction factors necessarily follow. "[I]n the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." *W.V. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). And "the third and fourth ... factors" for a preliminary injunction are also "established when there is a likely First Amendment violation." *Centro Tepeyac*, 722 F.3d at 191. A governmental entity "is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional," and "upholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

In short, the likelihood of success prong is dispositive for the preliminary injunction sought here. A "remand to allow the district court to [re]weigh the preliminary injunction factors" would only waste resources, because any subsequent denial of the Appellants' sought injunction would be an abuse of discretion. *See ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012).

*Second*, further emphasizing the inefficiency of remand, the district court already explained how it would resolve the remaining preliminary-injunction factors. When ruling on the temporary restraining order (later incorporated into the ruling on the preliminary injunction), the district court agreed that the likely merits are decisive in this case and it "need focus only on the first prong." JA415. The district court acknowledged that "the remaining three prongs are [] satisfied," since "the loss of constitutional freedoms … unquestionably constitutes irreparable injury." JA415. Requiring for the district court to say the same thing a second time serves no purpose. *See Scott*, 612 F.3d at 1289, 1297 (entering a preliminary injunction where the district court had signaled how it would rule on the other factors, if its merits analysis were reversed).

For these reasons, this Court should enter a preliminary injunction itself. At a minimum, it should reverse with instructions for the district court to enter a preliminary injunction. The remaining factors are easily satisfied here, any balancing

weighs heavily in favor of Appellants' free speech rights, and the harm from waiting outweighs whatever interest the School Board might have in delay.

## CONCLUSION

For these reasons, this Court should rule that Appellants are likely to succeed on the merits of their arguments, reverse the district court's denial of a preliminary injunction, and order a preliminary injunction entered in Appellants' favor.

DATED:   January 15, 2025

Andrew Block
Ian Prior
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE, Suite 231
Washington, D.C. 20003
(202) 836-7658
andrew.block@aflegal.org
ian.prior@aflegal.org

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy
Rachael C. T. Wyrick
Cody Ray Milner
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
rachael@consovoymccarthy.com
cody@consovoymccarthy.com

*Counsel for Plaintiffs-Appellants*

## REQUEST FOR ORAL ARGUMENT

Because this case presents important and novel questions about the scope of free-speech protections for parents speaking to school boards and the application of the vagueness doctrine to school boards' speech codes, Appellants respectfully request oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rules of Appellate Procedure 27(d)(1)(E) and 27(d)(2)(A) because it contains 11,348 words, excluding the parts that can be excluded. This brief also complies with the rules because it is prepared in a proportionally spaced face using Microsoft Word 16.91 in 14-point Times New Roman font.

DATED:   January 15, 2025                    /s/ *Thomas R. McCarthy*

**CERTIFICATE OF SERVICE**

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

DATED:   January 15, 2025                    /s/ *Thomas R. McCarthy*