No. 24-2182

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

ABBIE PLATT, ANNE MILLER, CARRI MICHON, JESSICA SMITH,
and SUZANNE SATTERFIELD,

*Plaintiffs-Appellants*,

v.

LOUDOUN COUNTY SCHOOL BOARD and MELINDA MANSFIELD,
individually and in her official capacity as Chairwoman of the Loudoun
County School Board,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia

———————————

**BRIEF OF AMICUS CURIAE COMMONWEALTH OF VIRGINIA
IN SUPPORT OF PLAINTIFFS-APPELLANTS**

———————————

JASON S. MIYARES
*Attorney General*

ERIKA L. MALEY
*Solicitor General*

KEVIN M. GALLAGHER
*Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 371-0200 – Facsimile

BRENDAN CHESTNUT
*Deputy Solicitor General*

January 22, 2025

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

As a governmental party, amicus curiae is not required to file a certificate of interested persons. Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................ 1

INTRODUCTION ............................................................................... 2

BACKGROUND ................................................................................. 3

    I.    Parents express safety concerns, but the Board silences criticism ....................................................................................... 3

    II.    Defendants criticize parents for "misinformation" and advancing a "political agenda" ............................................... 7

ARGUMENT ...................................................................................... 8

    I.    Defendants' own statements and actions show that they engaged in viewpoint discrimination ...................................... 8

        A.    Defendants admitted that they censored the speech because it was allegedly "advancing a political agenda" and "misinformation" ....................................................... 8

        B.    Defendants engaged in post hoc rationalization to justify discriminating against Plaintiffs ................................... 10

    II.    Defendants' inconsistent interpretation and application of Policy 2520 is further evidence of pretext .......................... 14

CONCLUSION ................................................................................. 18

CERTIFICATE OF COMPLIANCE ..................................................... 20

CERTIFICATE OF SERVICE .............................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Freedom Def. Initiative v. Washington Metro.*
*Area Transit Auth., WMATA,*
901 F.3d 356 (D.C. Cir. 2018) ............................................................ 14

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist.*
*Five,*
470 F.3d 1062 (4th Cir. 2006) .............................................................. 9

*Christian Legal Soc. Chapter of the Univ. of California,*
*Hastings Coll. of the L. v. Martinez,*
561 U.S. 661 (2010) ............................................................................ 14

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
473 U.S. 788 (1985) ............................................................................ 15

*Davison v. Rose,*
19 F.4th 626 (4th Cir. 2021) ........................................................... 9, 17

*EEOC v. Sears Roebuck & Co.,*
243 F.3d 846 (4th Cir. 2001) .............................................................. 11

*Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r*
*of Va. Dep't of Motor Vehicles,*
288 F.3d 610 (4th Cir. 2002) .............................................................. 15

*Iancu v. Brunetti,*
588 U.S. 388 (2019) .............................................................................. 2

*Lashley v. Spartanburg Methodist Coll.,*
66 F.4th 168 (4th Cir. 2023) .............................................................. 11

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964) ......................................................................... 2, 10

*Ridley v. Massachusetts Bay Transp. Auth.,*
390 F.3d 65 (1st Cir. 2004) ...................................................... 9, 11, 15

*Rosenberger v. Rectors & Visitors of Univ. of Va.*,
515 U.S. 819 (1995)................................................................9, 13

*Steinburg v. Chesterfield County Planning Comm'n*,
527 F.3d 377 (4th Cir. 2008)...............................................17

*TikTok Inc. v. Garland*,
604 U.S. __, 2025 WL 222571 (2025)..................................10

*Troxel v. Granville*,
530 U.S. 57 (2000)..................................................................1

*United States v. Schwimmer*,
279 U.S. 644 (1929)..............................................................14

*Whitney v. California*,
274 U.S. 357 (1927)................................................................2

## Other Authorities

Federal Rule of Appellate Procedure 29 ....................................1

*Target*, Merriam Webster, https://tinyurl.com/y9smpw24....................13

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* the Commonwealth of Virginia has a strong interest in protecting the free speech rights of its citizens. It also has an interest in preventing localities from using regulations and threats of enforcement to chill and stifle speech by citizens, including on controversial topics.

These interests are especially acute when political subdivisions and school boards seek to use pretext to shield themselves from legitimate criticism and silence parents raising earnest concerns about the safety of their children. Parents have a fundamental right to make decisions about "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.). Thus, civic engagement is all the more important when it involves parents worried about the safety and well-being of their children. The Commonwealth has a compelling interest in ensuring that parents can speak out on concerns about the safety of their children.

---

[1] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2).

## INTRODUCTION

The Loudoun County School Board and the Board's chair, Melinda Mansfield, acknowledged that they shut down public criticism of the Board because they believed that commenters were using "misinformation" and "talking points" to further a "political agenda." That action is classic viewpoint discrimination that offends the First Amendment.

A "core postulate of free speech law" is that the "government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019). If government officials disagree with critics, as Justice Brandeis explained long ago, "the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). This Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The free speech violation here is especially troubling because the plaintiffs are parents who were attempting to exercise their fundamental right to care for their children. The Board's decision to censor these parents shows why our country has always agreed that the government cannot be granted the authority to decide which issues are worthy of discussion or dictate how heartfelt views are expressed. Parents who voice concerns about their children's safety to elected officials should be encouraged to participate in public meetings, not censored.

Because Plaintiffs showed a strong likelihood of success on the merits of their free speech claim, this Court should reverse the district court's denial of the preliminary injunction on that claim.[2]

## BACKGROUND

### I.   Parents express safety concerns, but the Board silences criticism

In May 2023, a teenage boy was arrested in Purcellville, Virginia "leaving his home carrying a 9mm semi-automatic pistol." JA127. He was "charged with larceny of a firearm, possession of a firearm, and carrying a concealed weapon." JA127. News reports on the situation did not identify the boy by name and explained that the resolution of the case

---

[2] The Commonwealth does not take a position on the other arguments raised on appeal.

3

was "unclear" because "juvenile court records are sealed." JA127. But police did inform the public that the boy was a student at Ridge Middle School in Purcellville, "had previously been charged with multiple criminal offenses," and "had ties to MS-13, a transnational gang" with a presence in Northern Virginia. JA127.

In the fall of 2024, as a new school year began, news outlets reported that the boy was now attending Purcellville High School in the Loudoun County School District. JA126. Understandably, parents of children in the school district expressed safety concerns because of the boy's enrollment at their children's school. JA127. Certain parents then decided to express their concerns at the regularly scheduled Loudoun County School Board meetings.

At the October 8, 2024, School Board meeting, three of the plaintiffs attempted to express safety concerns regarding the Board's decision to re-enroll the unidentified student at a Loudoun County public school. The Board silenced them.

Anne Miller spoke first, explaining that the Board had "betrayed the trust of parents." See Oct. 8, 2024 Meeting at 2:28:43.[3] She noted that, under a previous School Board, "a child in the school system's care was sexually assaulted by a student who had been reassigned to her school" after a "cover up by the school system" of previous misconduct. *Id.* at 2:28:31–2:28:43. That criticism of the previous Board's handling of security issues with a specific student did not provoke Mansfield to censor Miller. Miller then turned to the current Board's failings, however. She criticized the Board for "play[ing] Russian roulette daily with our children." *Id.* at 2:28:51. She pointedly asked, "How many ticking time bombs are there like the reassignment of yet another student who poses a significant threat to the safety of students, a student with violent gang affiliations who was arrested." *Id.* at 2:29:02.

At this point, Mansfield interrupted Miller, warning her to "maintain the civility and decorum of the board" and to "refrain from comments on an individual student that could violate applicable confidentiality requirements." *Id.* at 2:29:10–2:29:30. Mansfield asserted

---

[3] It is undisputed that the videos of School Board meetings are relevant evidence in this case. See JA191. Recordings of the meetings are available at https://go.boarddocs.com/vsba/loudoun/Board.nsf/Public#.

that "[p]ersonally identifiable information is any information that a reasonable person can link together and pinpoint individual students" and insisted that the public commenters needed to "refrain from talking about a student without parent consent to discuss circumstances." *Id.* at 2:29:30–2:29:51.

Later, Carri Michon spoke about her concerns for school safety. She pointed out that the "perimeter security means nothing if within the walls the children aren't safe" and highlighted that "recently a student was carrying a concealed weapon walking to school . . . ." *Id.* at 2:37:26–2:37:33. At this point, Mansfield again interrupted, insisting that parents "refrain from disclosing personal identifiable information about a student." *Ibid.* She threatened to cut off public comment unless the speakers complied with her dictate. *Id.* at 2:37:30–2:37:51.

A third mother, Abbie Platt, expressed heartfelt concerns that she and her child shared. She asked the Board, "Where's the protection and the safety for our children who are in school with other children who have known threats, who have been arrested, and who are back in school?" *Id.* at 2:40:16–2:40:30. She further explained that her "daughter is terrified to go to school with him." *Id.* at 2:40:30–2:40:33. Again, Mansfield

6

interrupted, complaining that "what you're saying now is personally identifiable information." *Id.* at 2:40:46–2:40:49.

Shortly thereafter, another speaker began his remarks with, "Recently, the local media covered a story where a known gang member with a criminal record . . .". JA81. At that point, Mansfield declared that the public comment period was finished and that no more speakers were allowed to comment. JA81. Plaintiffs Suzanne Satterfield and Jessica Smith were never able to express their views during the public comment session. JA81, JA86.

## II. Defendants criticize parents for "misinformation" and advancing a "political agenda"

After the October 8, 2024, meeting, Mansfield and the superintendent of Loudoun County Public Schools released a statement explaining why the public comment was shut off. See JA63–64. The statement criticized the parents who spoke at the meeting for using "students' safety" as "talking points" to "advance" a "political agenda." JA63. Shutting down the public comments, the statement explained, was part of an effort to "be vigilant in actively combating" so-called "[m]isinformation." JA63. It also asserted that it would be "irresponsible" to allow "unverified" allegations to spread. JA63. Despite numerous

parents explicitly stating that their concerns were based on news reports, the statement attacked parents for "mak[ing] claims without naming or verifying sources," calling it "dangerous" and a "disservice not just to the individuals involved but to the entire community." JA63. That was especially true, the statement concluded, where the "unverified" information "involves our children and their safety." JA63.

Plaintiffs filed suit, arguing that Defendants engaged in viewpoint discrimination against them. See JA10. The district court denied injunctive relief, see JA415–18, JA458, and Plaintiffs appealed, JA459.

## ARGUMENT

### I. Defendants' own statements and actions show that they engaged in viewpoint discrimination

#### A. Defendants admitted that they censored the speech because it was allegedly "advancing a political agenda" and "misinformation"

Mansfield expressly stated that she chose to close public comment because parents were using "misinformation" and "talking points" to further a "political agenda." JA63. Her own statements thus show she was motivated by her fervent disagreement with the views the parents expressed. That textbook viewpoint discrimination violates the First Amendment.

All the parties agree that the School Board's public comment periods constitute a limited public forum. See Opening Br. 20. "Even in a limited public forum, however, the government 'must not discriminate against speech on the basis of viewpoint.'" *Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021) (quoting *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067–68 (4th Cir. 2006)). Such viewpoint discrimination is "presumptively unconstitutional." *Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995).

"[T]he government rarely flatly admits it is engaging in viewpoint discrimination," *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004)—but here Mansfield did just that. Mansfield's press release is clear about the motivations behind closing public comment at the meeting. She admitted that parents "sought to discuss what was reported in the media." JA63. At the same time, she condemns parents' supposedly using concerns about "students' safety" to further a "political agenda." JA63. Rather than allowing parents to express concerns about issues in the news, she decided to silence what she labels "misinformation." JA63. She even went so far as to claim that parents

9

wanting "to discuss what was reported in the media" was "particularly dangerous" because "it involves our children and their safety." JA63.

Mansfield's strongly felt disagreement with the parents criticizing the Board's decision to reenroll a student arrested for carrying a concealed weapon on the way to school does not provide a legal basis to engage in viewpoint discrimination. A statement does not lose constitutional protection simply because a government official claims it "contains 'half-truths' and 'misinformation.'" See *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964). Mansfield's decision to close public comment to silence those who she felt were spreading "misinformation" is a blackletter violation of fundamental First Amendment principles. See, *e.g.*, *TikTok Inc. v. Garland*, 604 U.S. __, 2025 WL 222571, at *12 (2025) (Gorsuch, J., concurring in the judgment) (the "usual and preferred remedy under the First Amendment" is "more speech," not less).

**B.**    **Defendants engaged in post hoc rationalization to justify discriminating against Plaintiffs**

The shifting explanations that Defendants gave for their actions also show that those reasons are pretextual.

"[S]tatements by government officials on the reasons for an action can indicate an improper motive." *Ridley*, 390 F.3d at 87. A "straight and consistent line of explanation is more persuasive than one which wanders here, there, and yonder." *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 177 (4th Cir. 2023); see also *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001) ("[T]he fact that [defendant] has offered different justifications at different times . . . is, in and of itself, probative of pretext.").

During the October 8, 2024, meeting, the Board offered two possible justifications for silencing Plaintiffs: Mansfield asserted that comments violated the "civility and decorum" of the Board, and she told Plaintiffs to "refrain from comments on an individual student that could violate applicable confidentiality requirements" by using "personally identifiable information." See Oct. 8, 2024 Meeting at 2:29:20–2:29:33. Mansfield never said that the speakers offended the "target[ing]" prohibition in the School Board's Policy 2520(A)(3).[4] Nor was "target[ing]" mentioned in Mansfield's press release explaining her motivation for shutting down

---

[4] Policy 2520(A)(3) states "Speaker comments that target, criticize, or attack individual students are not permitted during public meetings." JA25.

public comment. Rather, as discussed above, that release focused on the perceived "political agenda" of the parents. See pp.7–8, *supra.*

It was not until Defendants filed their first responsive brief in the litigation that they first invoked Policy 2520(A)(3) or directly accused Plaintiffs of violating that provision. See JA186. That makes the litigation contention that speakers were "interrupted and redirected . . . because of their targeting and criticizing of an individual student," JA377, a textbook example of post hoc rationalization. Defendants' litigation position appears to be to recast the references to stopping participants from using alleged "personally identifiable information" as admonitions about "target[ing]." Compare, *e.g.*, JA195 (claiming that Mansfield advised that "if the public continued to *target* an individual student, public comment would be concluded" (emphasis added)), with Oct. 8, 2024 Meeting at 2:40:45 (Mansfield cutting off comment by stating: "what you're saying now is personally identifiable information"). But Defendants did not attempt to invoke Policy 2520 until this litigation started.

And, of course, "targeting" is very different from merely discussing potentially "personally identifiable information." The ordinary usage of

the term "target" would entail treating someone as "an object of ridicule or criticism." See, *e.g.*, *Target*, Merriam Webster, https://tinyurl.com/y9smpw24. Merely "identifying" a student as a safety risk is not making that student "an object of ridicule or criticism." This is especially so given that the news reports did not even identify the student by name. See pp.3–4, *supra*. The parents' comments were simply concerning an unidentified risk to their children's safety, not the targeting of a particular student.

Defendants ultimately retreat to the position that the Board "is **not** required to allow for public comment at its regularly scheduled meetings." JA188; see also JA185 (Board has "no legal obligation to" allow public comment). Even if the Board views holding public comment as an unnecessary gesture, it does not excuse violating the First Amendment. Once the Board created a limited public forum, it could not engage in viewpoint discrimination. See, *e.g.*, *Rosenberger*, 515 U.S. at 829 (the First Amendment "forbid[s] the State to exercise viewpoint discrimination, even when the limited public forum is one of its own creation"). Public servants cannot purport to allow public comments while shielding themselves from robust criticism from constituents. After

13

all, "[t]he proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'" *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 706 (2010) (Alito, J., dissenting) (quoting *United States v. Schwimmer*, 279 U.S. 644, 654–655 (1929) (Holmes, J., dissenting)).

## II. Defendants' inconsistent interpretation and application of Policy 2520 is further evidence of pretext

Defendants' interpretation and application of Policy 2520 is further indicative of viewpoint discrimination. A plaintiff may show that "the viewpoint-neutral ground is not actually served very well by the specific governmental action at issue . . . in other words, the fit between means and ends is loose or nonexistent." *American Freedom Def. Initiative v. Washington Metro. Area Transit Auth., WMATA*, 901 F.3d 356, 366 (D.C. Cir. 2018) (quotation marks omitted).

Defendants treated others differently than Plaintiffs even though those others would have violated the purported interpretation of Policy 2520 on which Defendants now claim to rely. Defendants have asserted in this litigation that Policy 2520 prohibits even "discuss[ing] individual students during the public comment session." JA208. But that claim is

belied by the fact that the Board allowed other statements referring to identifiable students—so long as they did not criticize the Board. This viewpoint-motivated inconsistent position violates the First Amendment.

Where an "evaluation of a given restriction and the surrounding circumstances indicates that one or more speakers are favored over others, and further that the basis for the restriction is in fact the message the disfavored speaker seeks to convey, the restriction violates the First Amendment." *Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r of Va. Dep't of Motor Vehicles*, 288 F.3d 610, 624 (4th Cir. 2002). Indeed, where "the government states that it rejects something because of a certain characteristic, but other things possessing the same characteristic are accepted, this sort of underinclusiveness raises a suspicion that the stated neutral ground for action is meant to shield an impermissible motive." *Ridley*, 390 F.3d at 87 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 812 (1985)).

Examples abound. Consider the comments by Plaintiff Miller. She started out by criticizing the previous board, reminding the meeting attendees that "a child in the school system's care was sexually assaulted by a student who had been reassigned to her school" after a "cover up by

the school system" of previous misconduct. See p.5, *supra*. Because this had happened, Miller criticized the Board for "play[ing] Russian roulette daily with our children." See *ibid.*, *supra*. Despite such strongly worded criticism mentioning an identifiable student, Mansfield did not claim that Miller violated the supposed prohibition. In fact, Mansfield only jumped in once the *current* board's decisions—allowing "the reassignment of yet another student who poses a significant threat to the safety of students, a student with violent gang affiliations who was arrested," see *ibid.*, *supra*—were questioned.

Other incidents show that Defendants did not enforce the purported prohibition on "target[ing]" students so expansively to include "discuss[ing] individual students" when it came to other speakers. JA208. For example, at the September 24, 2024, meeting, the Board referred to the 57 students who had been named national merit scholarship semifinalists. https://go.boarddocs.com/vsba/loudoun/Board.nsf/Public#. Allowing such a reference, of course, would be consistent with the ordinary usage of the terms "target, criticize, or attack." See pp.12–13, *supra*. But under Defendants' proffered reading of the restriction, the School Board would not be able to discuss such award winners.

Indeed, this undermines Defendants' claim that Policy 2520 "mirrors" the provisions addressed by this Court in two previous cases. See *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377 (4th Cir. 2008); *Davison v. Rose*, 19 F.4th 626 (4th Cir. 2021); JA211. In those cases, this Court upheld policies against "personal attacks" in a limited public forum. *Davison*, 19 F.4th at 635 (citing *Steinburg*, 527 F.3d at 387). A "personal attack," this Court has explained, is "an insult directed at a person and not speech directed at substantive ideas or procedures at issue." *Steinburg*, 527 F.3d at 386–87. As such, a personal attack is "surely irrelevant—unless, of course, the topic legitimately at issue is the person being attacked, such as his qualifications for an office or his conduct." *Id.* at 387. This Court thus concluded that a ban on personal attacks did not offend the First Amendment because those attacks by their nature have the "potential for causing unnecessary delay or disruption." *Davison*, 19 F.4th at 635; see also *ibid.* (noting that the school board "limit[ed] public comment in this way in order 'to maximize citizen participation and to allow the Board to transact public business in an orderly, effective, efficient and dignified manner'").

But Defendants are not using Policy 2520 in the same, narrow way.

17

Instead, Defendants treat personal attacks as acceptable, as long as they are not personal attacks on the current Board. And a statement does not have to be a "personal attack" to trigger the policy, at least according to the Board; rather, merely "discuss[ing] individual students during the public comment session" suffices. JA208. Defendants' overinclusive and underinclusive application of Policy 2520 runs afoul of the First Amendment.

## CONCLUSION

This Court should reverse the judgment of the district court as to the free speech claim.

Respectfully submitted,

THE COMMONWEALTH OF VIRGINIA

By: _____ */s/ Kevin M. Gallagher* _____
    Kevin M. Gallagher
    *Principal Deputy Solicitor General*

JASON S. MIYARES
  *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 371-0200 – Facsimile

January 22, 2025

ERIKA L. MALEY
  *Solicitor General*

BRENDAN T. CHESTNUT
  *Deputy Solicitor General*

*Counsel for the Commonwealth of Virginia*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,292 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Kevin M. Gallagher*

Kevin M. Gallagher

## CERTIFICATE OF SERVICE

I certify that on January 22, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher